KOLOSINSKI v. MODERN BROTHERHOOD OF AMERICA.

1. INSURANCE—MUTUAL BENEFIT POLICY—WAIVER OF BY-LAWS.
   Where plaintiff and his wife applied for membership in defendant mutual benefit association, and at the time of initiation only plaintiff was initiated, although initiation was required by the by-laws of defendant, the wife being ill and unable to take part in the ceremony, and it also appeared that the local assistant secretary of the lodge issued a certificate of membership to both plaintiff and his wife, and afterwards received from the wife assessments, which defendant retained in ignorance of the fact that she had not qualified as a member, tendering them back after commencement of suit, upon learning the facts, waiver of the initiation provided for by defendant's by-laws was not established.

2. SAME—WAIVER—CONDITIONS PRECEDENT.
   Provisions of a benefit policy reciting that the assured waived all rights under the same until the application had been approved by the proper official and she had become a member and been duly initiated and had made the required payments and received the certificate while in sound health, were conditions precedent to any rights under the policy: undisputed evidence that insured never was in good health after the application and had never been initiated, defeated any right to recover on the certificate.

3. SAME.
   Defendant could not be held to have waived the requirements of the policy because it was delivered to plaintiff by the local assistant secretary who had no authority under the by-laws to waive any provisions thereof.

Error to Wayne; Murphy, J.  Submitted June 12, 1912.  (Docket No. 88.)  Decided May 29, 1913.

Assumpsit by Julius Kolosinski against the Modern

Brotherhood of America upon a benefit certificate issued to Mary Kolosinski. Judgment for plaintiff. Defendant brings error. Reversed; new trial refused.

*Stephen D. Williams* and *John E. Foley,* for appellant.

*McHugh, Gallagher & McGann,* for appellee.

McALVAY, J. Plaintiff sues, as beneficiary, upon a membership certificate in the defendant fraternal organization issued to Mary, his wife, under date of November 11, 1909. Plaintiff and his wife made application for membership in Detroit Lodge No. 1128 on the same day, November 5, 1909. They were examined by the lodge physician, Dr. McGeagh, on November 6, 1909. They were notified to be present at the lodge for initiation on the evening of November 12, 1909. Plaintiff presented himself and was duly initiated at that time, but Mary, his wife, did not present herself because of illness, and was never initiated. At the conclusion of the initiation exercises plaintiff asked for and received from the acting secretary the certificate of membership of his wife as well as his own. This certificate plaintiff took home and delivered to his wife, who retained it in her possession from November 12, 1909, until March 2, 1910, when she died.

Attached to the certificate of membership (policy) is the medical examination of the applicant. Question No. 44, "Are you now pregnant?" is shown to have been answered in the negative. Following this question and answer is the statement, "If pregnant a special pregnancy waiver must be signed." No such waiver was signed by the applicant.

The application attached to the certificate contained the following warranties:

"I declare and warrant that I am, to the best of my knowledge and belief, in sound health and physical

conditions, and that the above statements, together with the statements and answers made, or to be made, by me in other parts of this application are literally true.

"I further agree that any untrue statement or answer, or any concealment of facts, intentional or otherwise, in this application (including the succeeding parts hereof), or my failure to pay any fines, dues or assessments required by said Modern Brotherhood of America, and within the time therein provided, or my being suspended or expelled from said society shall forfeit the rights of myself and my beneficiary, or beneficiaries, to any and all benefits to be derived from my membership in said society.    *    *    *

"I declare and warrant that each of the foregoing statements and answers is full, complete and literally true; and I hereby agree that the exact literal truth of each shall be a condition precedent to any binding contract, or benefit certificate, issued upon the faith of the foregoing answers.  I further agree that the foregoing answers and statements, together with the preceding declarations in this application made, including the by-laws, rules and regulations of said Modern Brotherhood of America, now in force or hereafter enacted, together with its articles of incorporation, shall form the sole basis of contract between me and said Modern Brotherhood of America, and are offered by me as a consideration for the benefit certificate hereby applied for, and are hereby made a part of any benefit certificate that may be issued on this application, and shall be deemed and taken as a part of such benefit certificate."

The by-laws of the defendant order were introduced in evidence.  They contain the following provisions:

"Sec. 120.  Initiation of Applicants.  On receipt of the benefit certificate the secretary of the subordinate lodge shall notify the applicant, who shall be initiated, adopted and obligated by said subordinate lodge at a regular or special meeting, but under no circumstances shall said benefit certificate be delivered to said applicant until he has been  initiated, adopted and obligated.

"Sec. 121.  Lodge may Refuse to Initiate.  At any time before the initiation of the  applicant the sub-

ordinate lodge may, by majority vote, refuse to initiate, in which case the benefit certificate, with notice of the action taken by the lodge, shall be immediately returned to the supreme secretary."

"SEC. 135. No Waiver of Any By-Laws. No officer of this society, either of the supreme or any subordinate lodge, shall have any power or authority, nor shall such officer be permitted, to waive any of the provisions of the by-laws of this society which relate to the contract between the member and the society, whether the same be now in force or hereafter enacted."

The record discloses the fact that the insured woman was, at the time of her examination for admission to membership in the defendant order, pregnant, and had been in that condition for some 6½ months; that she was delivered of a child on December 21, 1909, about three or four weeks before full period, and that she died on March 2, 1910, having been ill and under the care of a physician practically all the time from November 7, 1909. Defendant interposed with its plea a notice, by way of special defense, that it would show that she had falsely answered the question relative to her pregnancy.

It was not until the trial was on, and during the plaintiff's examination, that it was learned from him that his wife had never been initiated or obligated in the defendant society. As soon as the fact was learned, leave was asked and granted to amend the notice so as to raise that defense also. The records of the lodge, introduced in evidence, show that on the evening of November 12, 1909, 58 candidates were adopted. That plaintiff's wife was not among this number is admitted by plaintiff, and it is not asserted by him that she was ever initiated, adopted, and obligated as required by rule 120; indeed it is clear upon this record that she never was in such physical condition as would have enabled her to comply with the rule. Nevertheless, plaintiff asked the young woman

acting as assistant secretary to deliver her certificate to him, and he paid on her account 80 cents, the requisite amount. Between November 12, 1909, and March 3, 1910, four monthly payments of 65 cents each were paid by plaintiff to the local lodge on account of his wife's certificate, said payments being received and retained by the supreme lodge without any claim being made that the woman was not a member of the organization.

The question of fraudulent misrepresentation as to pregnancy may be passed, although the conceded condition of the insured, her failure to sign a pregnancy waiver, the testimony of the examining physician, and the fact that she examined the certificate containing the false statement and retained it in her possession for nearly four months, all tend to establish a fraudulent intent. *Metropolitan Life Ins. Co.* v. *Freedman,* 159 Mich. 114 (123 N. W. 547, 32 L. R. A. [N. S.] 298), and cases there cited.

The record shows that the defendant received the dues on account of the certificate of the insured in ignorance of the fact that she had never been obligated. D. M. Davis, the then local secretary of the local lodge, was absent in Chicago on the night of November 12th and his duties were performed by Miss O'Brien, his assistant. He testified:

"At that time I knew who were paying the assessments, whom they were paid for. I entered that assessment as being paid upon my books upon the account of Mary Kolosinski, and I found her account there upon my books, listed as a member. I didn't know she hadn't been a member until it was brought (out) by Mr. Smalley. I didn't know until yesterday, when the defendant brought it out by Mr. Smalley."

The receipt and retention of the dues by the grand lodge cannot be urged as a waiver, where such action was based upon the mistaken belief that the insured

was a member; the dues being tendered back immediately upon discovery of the mistake.

A motion having been made by the defendant for a directed verdict, the court denied it, saying:

"The defendant's motion for a directed verdict hinges upon the claim that no authority rested in the local lodge or local ministerial officer, the acting secretary, when she delivered the certificate to the plaintiff, so to do. The requirement for initiation is contended to be an essential condition precedent to membership, and the delivery of the certificate by the acting secretary was done without authority; she having no right to waive the provisions of the by-laws. I think these contentions are answered adversely to the defendant in the decision of *Wagner* v. *Knights of Honor*, 128 Mich. 660 [87 N. W. 903]. The motion is therefore denied. The questions of fact to be considered by the jury, then, are whether the deceased did conceal and misrepresent her condition to the examining physician, and whether the certificate was fraudulently procured by the plaintiff. I think that disposes of the matter."

We are of opinion that the motion should have been granted. A careful examination of the case of *Wagner* v. *Knights of Honor*, 128 Mich. 660 (87 N. W. 903), shows that it is not controlling of the case at bar. In that case, this court said, speaking of Mrs. Wagner, the insured:

"His wife also became a social member. Whether she became a beneficiary member is the chief subject of controversy."

The record in that case shows, though the opinion does not, that the general laws of the defendant society provided:

"That in case of approval by the supreme medical examiner of persons who are 'social' members of the order, but not entitled to the benefits of the order, the application and certificate fee shall be forwarded to the supreme secretary immediately after receiving such notice of approval. Such members applying for

the benefits of the order shall be subject to all the foregoing requirements, *except that of initiation.*"

This court said further:

"The main defense is one of fact, viz., that no certificate was ever issued."

The certificate of membership in the *Wagner Case* contains no provision relative to initiation, while the certificate issued by defendant in the case at bar to Mrs. Kolosinski provides:

"I waive for myself and beneficiaries any and all rights to any benefit under this application, or any benefit certificate issued thereon, until this application shall have been approved by the supreme physician, and I shall have been regularly adopted and initiated in accordance with the ritual of said society, and have made the payments at the time of my adoption and initiation, as required by said by-laws, rules and regulations, and said benefit certificate shall have been issued in pursuance of this application and delivered to me, after adoption and initiation, and while in sound health and physical condition, and in accordance with the provisions of said by-laws, rules and regulations.
[Signed]        "MARY KOLOSINSKI,
                        "Person Examined."

In view of this plain and unequivocal waiver on the part of the insured, and the undisputed fact that she was never initiated in the order, and never was (after the date of the application) in a condition of "sound health and physical condition," so that she could have been initiated, we are of opinion that she never became a member of the defendant society, and that the membership certificate obtained by her through plaintiff never became a binding contract. As was said in *Louden* v. *Modern Brotherhood of America,* 107 Minn. 12 (119 N. W. 425):

"The contract is that the applicant must be in good health at the time he completes the final act of membership. Then, and not till then, is he entitled to the certificate."

See, also, *Shartle* v. *Modern Brotherhood of America*, 139 Mo. App. 433 (122 S. W. 1139) ; *Matkin* v. *Knights of Honor*, 82 Tex. 301 (18 S. W. 306, 27 Am. St. Rep. 886) ; *Driscoll* v. *Modern Brotherhood of America*, 77 Neb. 282 (109 N. W. 158) ; *Bruner* v. *American Yeomen*, 136 Iowa, 612 (111 N. W. 977) ; *Supreme Lodge Knights & Ladies of Honor* v. *Johnson*, 81 Ark. 512 (99 S. W. 834).

The claim of plaintiff that Miss O'Brien, the assistant secretary of the local lodge, could and did waive the by-law requiring initiation, by delivering Mrs. Kolosinski's policy to plaintiff, is not tenable. Defendant's by-law No. 135, above quoted, denies such authority, and this court has held that such an officer does not possess the power to waive the by-laws. *Larkin* v. *Modern Woodmen of America*, 163 Mich. 670 (127 N. W. 786), and cases there cited.

Reversed, and no new trial ordered.

STEERE, C. J., and MOORE, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.